Fuchsberg, J. (dissenting).
The mortgage agreement, under which the real estate tax escrow payments involved here were made by appellant, comes before us for review as a result of respondent’s CPLR 3211 (subd. [a], par. 7) motion to dismiss on the ground the petition does not state a cause of action. I conclude it does.
In pertinent part, the agreement provides: “The mortgagee shall hold such monthly payments in trust to apply the same against such taxes when due”. (Emphasis added.)
Respondent contends that even if all of petitioner’s 'allegations, including those incorporating the language of the agreement, are true, petitioner ultimately will not be able to prove a trust relationship was created or intended. Perhaps because it is so early in the case, it has not sought to reform the instrument. Instead, in support of its contention, respondent points to parol evidence consisting of a conversation that occurred during the closing.
In that conversation, petitioner inquired whether interest payments would be made by respondent on the tax escrow fund. Respondent replied that it would not do so. As the majority *181 itself has made clear, the express language of the conversation referred to “ interest ” and not to “ earned income ”. That becomes significant.
For, though respondent urges that the conversation conclusively demonstrates that the parties did not intend a trust relationship, it does no such thing. An obligation to pay interest would interdict a trust, but the lack of an obligation to do so is consistent with the existence of just such a relationship. Comment g of- section 12 of the Restatement of Trusts, 2d, provides: “ If there is an understanding between the -parties that the person to whom money is paid shall pay ‘ interest ’ thereon (at a fixed or at the current rate, and not merely -such interest as the money, being invested, may earn) the relationship is practically always a debt and not a trust. Interest is paid for the use of the money, and if the payee pays interest he is, in the absence of a definite understanding to the contrary, entitled to use the money for his own purposes. It is theoretically possible, of course, for a trustee to pay ‘ interest ’ from hi® own funds, but in the absence of a clear agreement to that effect such an intention would not be found.”
Once we understand -that the elimination of an obligation to pay “ interest ” does not negate the existence of a trust relationship, then it becomes clear that the absence of a discussion about any actual “ earned income ” does not do so either. To reason otherwise would be to beg the question, which is whether a trust is created. If it is, then appellant’s right to the income actually earned automatically follows as a matter of law without the necessity of any agreement, written or oral, to spell it out. (Matter of Wignall v. Fletcher, 303 N. Y. 435, Blaustein v. Pan Amer. Petroleum & Transp. Co., 174 Misc. 601, mod. 263 App. Div. 97, affd. 293 N. Y. 281; Lonsdale v. Speyer, 249 App. Div. 133.)
And, though the phrase “ in trust ” is not conclusive (which it need not be for the purposes of the motion which gives rise to .this appeal), I cannot assent to its characterization as a meaningless “ label ”, especially when used in an instrument drawn by a large banking institution in a transaction between two sophisticated parties. As words of art, used by at least one skilled and experienced legal draftsman, they impart a great deal and should be accorded considerable weight. The *182 essential elements of a trust — a designated beneficiary, a trustee, a fund and delivery of title to the res to the trustee — are all here. (City Bank Farmers Trust Co. v. Charity Organization Soc. of City of N. Y., 238 App. Div. 720, affd. 264 N. Y. 441.)
Of course, it may be, as at least one of the amici tries to suggest, that there were no earnings or that the proof of what the earnings were might be difficult, but those would be matters for trial.
Nor do I see how we here can determine that when appellant raised a question about interest, with its connotation of a fixed obligation, it intended to include whatever income was actually earned. Or that it intended to subscribe to any as yet unproved practice followed by other parties in other deals under whatever may be their own variety of mortgage agreements. The assumption of adherence to any such practice would be all the more illusory at a time when the trend of public policy appears — as witness the very provisions of the Banking Law and General Obligations Law referred to by the majority — to frown on the retention of such earnings by mortgagees as windfalls to be avoided. That is not to say that I believe it necessary to this determination to give judicial recognition to such a policy here, though I note that both the highest courts of Massachusetts and of Pennsylvania have recently held that allegations similar to those of the petitioner, and even in the absence of specific trust language, are sufficient to withstand motions in the nature of a demurrer. (See Buchanan v. Brentwood Fed. Sav. & Loan Assn.,-Pa.-, 320 A. 2d 117; Carpenter v. Suffolk Franklin Sav. Bank,-Mass.-, 291 N. E. 2d 609.) Thus, even if respondent’s motion here had been converted into one for summary judgment,* the agreement, which, on its face, appears to create a trust, would, in the presence of any *183 claimed ambiguity, require that any such ambiguity and the underlying intention of the parties be explored at a hearing where each party could present whatever proof is available to it, including all relevant closing, preclosing and postclosing statements rather than a single undeterminative question and answer.
As we have had occasion to say not too long ago: “ If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury (Restatement, 2d, Contracts, T. D. No. 5, § 238). On the other hand, if the equivocality must ibe resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court. (Cf. Mallad Constr. Corp. v. County Fed. Sav. & Loan Assn., 32 N Y 2d 285, 291.) ” (Hartford Acc. & Ind. Co. v. Wesolowshi, 33 N Y 2d 169, 172.)
The order should be reversed.
Chief Judge Breitel and Judges Jasen, Gabrielli and Cooke concur with Judge Jones; Judges Wachtler and Fuchsberg dissent and vote to reverse in their own separate opinions.
Order affirmed, without costs.

 Since a September 1, 1973. amendment of CPLR 3211 (subd. [e]), a court “ after adequate notice to the parties, may treat the motion as a motion, for summary judgment.” The order here was made on May 3, 1973. However, even before the amendment, it was held that, as a rule, unless the parties themselves request it, they should be apprised of any intention to so treat a 3211 motion in order that “ an appropriate record * * * may be made by the parties ”. (Moreno v. Kibbe, 32 A D 2d 825.) The record here does not disclose any such notice or request.