OPINION OF THE COURT
Rudolph U. Johnson, J.
Petitioner, Marine Midland Bank, N. A. of Buffalo, seeks an order judicially settling its accounts as trustee of separate trust agreements made and executed by Sara I. Manasen in favor of respondents, Daniel and Carla Primeau, grandchildren.
The trust agreements were created on September 5, 1980, as irrevocable trusts, in a nominal sum of $50, with net income payable at the trustee’s discretion to the beneficiaries, and terminated upon the death of the grantor, April 16, 1982.
On September 19, 1980, the trust for Daniel Primeau borrowed $200,000 from the grantor, and the trust for Carla Primeau borrowed $100,000 from the grantor. These loans were interest free, for an indefinite term, and payable on demand. Under the trust agreement, the income produced by the trustee’s investments of these loaned funds was deemed net income and was payable, after annual commissions and costs, to the beneficiaries.
*230 In addition to annual commissions, the petitioner now claims that, as it provided services for the care and investment of the loaned funds in the same manner as it did for the initial $50 trust funds, then these loaned funds should also be considered, for the purposes of compensating the trustee, as trust principal. In settling its accounts, the trustee has, therefore, deducted a 1% paying out commission in accord with SCPA 2309 (subd 1) which mandates: that the court “must allow to the trustee for his services as trustee a commission from principal for paying out all sums of money constituting principal at the rate of 1 percent”.
Both the petitioner and the executors for the estate of the grantor (Kevin D. Cox, Esq., and Sheridan A. Manasen, D.D.S.), in reliance upon the decision of the United States Court of Appeals in Crown v Commissioner of Internal Revenue (585 F2d 234), maintain that this device of a nominal trust with additional loan funding creates a novel instrument, which permits a high income taxpayer to shift investment income to a near relative in a lower tax bracket, without suffering any gift tax, while preserving to the grantor or her estate the principal sum loaned.
As a consequence, executors Cox and Manasen agree with the trustee’s application of SCP A 2309 (subd 1) and have no objection to the petitioner’s charge against the principal sum loaned of a 1% paying out commission.
Respondents, Daniel and Carla Primeau, however, do object and maintain that any such disbursing commissions must be limited to computations based on the value of trust principal remaining in the hands of the trustee, namely, $50, respectively.
Respondents argue that the additional loaned funds were never intended to be deemed trust principal and must be repaid in whole to the grantor’s estate.
This court is now asked to decide whether these loaned funds constitute principal within the meaning of SCPA 2309 (subd 1).
Clearly, we believe, they do not.
EPTL article 11 (part 2), entitled, Investments by fiduciaries: powers and duties relating thereto, defines principal *231 at EPTL 11-2.1 (subd [b], par [2]) as: “property, disposed of in trust, the income from which is payable to or to be accumulated for an income beneficiary and the title to which is ultimately to vest in the person entitled to the future estate.”
In the instant trust agreements, title to only the initial $50 trust funds was ever intended to pass to the trustee and only these funds would ever “vest in the person entitled to the future estate”. Title to the loaned funds remained with the lender, vested in no future estate, and, in due course, are repayable to the lender or her estate. Although the petitioner serviced these funds as if they were trust principal, the underlying consideration of the grantor and the trustee was that a tax-saving device — not a future estate — had been created. (See City Bank Farmers’ Trust Co. v Charity Organization Soc. of City of N. Y., 238 App Div 720.)
While the petitioner and the executors, Cox and Manasen, argue that to disallow the inclusions of these loans as chargeable principal under SCPA 2309 (subd 1) negates the practical use of what they suggest to be the court-approved “Crown Trust” as an estate planning device, this is of little concern to the court. Rather, we are charged with interpreting and applying statutory enactments within the intention of the Legislature.
Here the statutory requirement of SCPA 2309 (subd 1) that 1% paying out commissions be calculated on “sums of money constituting principal” is a clear reference to the recognized common-law meaning of trust principal as more specifically defined in EPTL 11-2.1 (subd [b], par [2]). It does not permit the elevation of these loans to principal status, even for the limited purpose of calculating commissions, and not even if the grantor/lender and the trustee/ borrower had so intended.
This court cannot, therefore, grant the protection of statutory mandate to petitioner’s commissions by transforming these funds from loans to trust principal and back again to loans. It was thus incumbent on the trustee to protect its compensation by specifically providing for it within the trust agreements.
*232 (The court notes in passing that the Crown decision dealt only with interest-free demand loans made directly to near relatives, without employing the intermediary aid of a trustee. The Court of Appeals decision was grounded on the finding that no gift tax could be imposed as the transfer of economic benefit was then incomplete, and remained “totally dependent on the lender’s continuing willingness to refrain from demanding repayment.” [Crown v Commissioner of Internal Revenue, supra, at p 238.] The appellate court pointed out that:
“More analogous to the situation of no-interest loans repayable on demand is the establishment of a revocable trust. There the income payments to the beneficiary are considered gifts from the grantor during the calendar years received * * *8
“8 The important distinction between a revocable trust and an interest-free demand loan is that in the former case, the beneficiary is given the income already produced by the capital, while in the latter the borrower receives only the opportunity to use the capital productively.” [Crown v Commissioner of Internal Revenue, supra, at p 237.]
The Crown decision did not, therefore, create any such creature as a “Crown Trust” and the validity of the tax-saving device used herein employing a trustee compelled to invest the loan principal and pay out the then produced income, has yet to be tested and appears to be in doubt.)
Upon review of the petitioner’s accounts and the trust agreements, it is apparent that the respondent’s right to receive income existed only until the termination of the trusts, that is, until the death of the grantor.
The respondents, therefore, can only claim a distribution of $50 in principal and all accumulated income as of April 16, 1982. They have no standing to object to the treatment given or charges made against the loaned funds after that date.
Petitioner’s schedule of accounts, however, presumes the loans to be trust principal and calculate earnings, commissions, and disbursements, not only on this erroneous assumption, but also for a period beyond the termination date. These accounts shall, therefore, be recalculated to reflect the proper sums due respondents, as well as any *233 income earned on the $50 principal from April 16, 1982. All other accumulated income, together with the loan principal shall be paid to the estate of Sara I. Manasen.
While the petitioner is not entitled to the mandated commissions of SCPA 2309 (subd 1), nevertheless, it has shown an equitable right to commissions for the care and investment of the loaned funds. The executors have expressed a willingness to pay commissions at 1% of the loan principal to be paid back.
The propriety of these charges is, of course, for the executors’ approval, subject to the Surrogate Court’s consideration, on objection by interested heirs. This court is compelled only to note that the attorney for the petitioner seeking commissions is also a named executor who now consents to the commissions sought.
Accordingly, the petition to settle the trustee’s accounts is denied. Petitioner shall redraft its accounts in compliance with this memorandum decision and resubmit them for this court’s approval.